**UNITED STATES ex rel. HOLLY v. COMMONWEALTH OF PENNSYLVANIA.**

No. 151.

United States District Court
W. D. Pennsylvania.

Dec. 13, 1948.

863

GOURLEY, District Judge.

This proceeding involves application for leave to file in forma pauperis petition for writ of habeas corpus, and the request for issuance of a rule thereon to show cause why the petitioner should not be discharged from the custody of the law.

In passing upon the question, the Court has taken judicial knowledge and considered the following matters:

(a) The allegations of fact set forth in the petition.

(b) Records of the Superior Court of the Commonwealth of Pennsylvania.

(c) Records of the Supreme Court of the Commonwealth of Pennsylvania.

(d) Records in the Court of Common Pleas of Allegheny County, Pennsylvania.

(e) Records in the Court of Quarter Sessions and in the Court of Oyer and Terminer and General Jail Delivery for Fayette County, Pennsylvania.

In the Court of Oyer and Terminer and General Jail Delivery for the County of Fayette, Commonwealth of Pennsylvania, the following indictments were returned against the petitioner, John J. Holly:[1]

The petitioner, John J. Holly, entered a plea of not guilty to all of said indictments and was represented by a very able and experienced member of the Bar in Fayette County.

In each of said trials the petitioner, John J. Holly, was convicted and the following sentences were imposed by the Court:

(1) No. 25/156 September Term, 1946. On March 3, 1947, the defendant, John J. Holly, was sentenced on the third count of said indictment—bringing stolen property into the Commonwealth of Pennsylvania. Sentence—"To pay the costs of prosecution, a fine of one dollar to the Commonwealth, and undergo an imprisonment in

[1] (The Court has referred generally to all the counts of each indictment and the offenses against the defendant were properly laid and charged in accordance with the provisions of law in the Commonwealth of Pennsylvania.)

(1) Indictment No. 25/156 September Term, 1946.

(a) On May 23, 1946, John J. Holly unlawfully removed or transferred an engine number or manufacturer's serial number on a motor vehicle without having applied for and been issued a license to do so. 75 P.S.Pa. § 63.

(b) On May 23, 1946, John J. Holly unlawfully did sell or offer for sale a motor vehicle in connection with which the engine number or manufacturer's serial number had been destroyed, removed, covered, altered or defaced, with knowledge of said conditions to have existed. 75 P.S.Pa. § 66.

(c) On May 23, 1946, John J. Holly did unlawfully bring, and/or assist in bringing, into the Commonwealth of Pennsylvania a motor vehicle, knowing or having reasonable cause to know the same to have been stolen in the State of Michigan. 18 P.S.Pa. § 4818.

(d) On May 23, 1946, John J. Holly did receive a motor vehicle well knowing the same to have been stolen. 18 P.S.Pa. § 4817.

(2) Indictment No. 21/152 September Term, 1946.

(a) On May 9, 1946, John J. Holly unlawfully removed or transferred an engine number or manufacturer's serial number on a motor vehicle without having applied for and been issued a license to do so. 75 P.S.Pa. § 63.

(b) On May 9, 1946, John J. Holly unlawfully did sell or offer for sale a motor vehicle in connection with which the engine number or manufacturer's serial number had been destroyed, removed, covered, altered or defaced, with knowledge of said conditions to have existed. 75 P.S.Pa. § 66.

(c) On May 9, 1946, John J. Holly did unlawfully bring, and/or assist in bringing, into the Commonwealth of Pennsylvania a motor vehicle, knowing or having reasonable cause to know the same to have been stolen in the State of Ohio. 18 P.S.Pa. § 4818.

(d) On May 9, 1946, John J. Holly did receive a motor vehicle well knowing the same to have been stolen. 18 P.S.Pa. § 4817.

(3) Indictment No. 13/109 September Term, 1946.

(a) On June 25, 1946, John J. Holly did receive a motor vehicle well knowing the same to have been stolen. 18 P.S.Pa. § 4817.

(b) On June 25, 1946, John J. Holly did unlawfully counsel, aid and abet one Wilbert H. Ellis in the commission of a felony, to wit: larceny of a motor vehicle, property of a resident of the State of Ohio. (Defendant was not tried on this count)

(c) On June 25, 1946, John J. Holly did unlawfully, falsely, maliciously, conspire, confederate and agree between and among themselves, to wit: Wilbert H. Ellis and John Moorman to steal a motor vehicle belonging to a resident of the state of Ohio. (Defendant was not tried on this count)

the Western Penitentiary for an indeterminate period of not less than two and one-half years and not more than five years, to be computed from July 25, 1946. On the other counts in this indictment, sentence is suspended until further order of this court, a sentence of imprisonment thereon in the penitentiary not being authorized."

On April 1, 1947, the sentence imposed on March 3, 1947, was amended to read as follows: "The defendant, John J. Holly, is sentenced on the Third Count (bringing stolen property into state) and on the Fourth Count (receiving an automobile knowing the same to have been stolen) to pay the costs of prosecution, a fine of one dollar to the Commonwealth, and undergo an imprisonment in the Western Penitentiary for an indeterminate period of not less than two and one-half years and not more than five years, to be computed from July 25, 1946. On the other counts in this indictment sentence is suspended until further order of this court, a sentence of imprisonment thereon in the penitentiary not being authorized."

(2) No. 21/152 September Term, 1946. On March 3, 1947, the defendant, John J. Holly, was sentenced on the third count of said indictment—bringing stolen property into the Commonwealth of Pennsylvania. Sentence—To "pay the costs of prosecution, a fine of one dollar to the Commonwealth, and undergo an imprisonment in the Western Penitentiary for an indeterminate period of not less than two and one-half years and not more than five years, the same to commence and be computed from the expiration of the sentence this day imposed at No. 25/156 September Term, 1946. On the other counts in this indictment sentence is suspended until further order of this court, a sentence of imprisonment thereon in the penitentiary not being authorized."

On April 1, 1947, the sentence in this case imposed on March 3, 1947, was amended to read as follows: "The defendant, John J. Holly, is sentenced on the Third Count (Bringing stolen property into state) and on the Fourth Count (Receiving an automobile, knowing the same to have been stolen), to pay the costs of prosecution, a fine of one dollar to the Commonwealth,

and undergo an imprisonment in the Western Penitentiary for an indeterminate period of not less than two and one-half years and not more than five years, the same to commence and be computed from the expiration of the sentence this day imposed at No. 25/156 September Term, 1946. On the other counts in this indictment sentence is suspended until further order of this court, a sentence of imprisonment thereon in the penitentiary not being authorized."

(3) No. 13/109 September Term, 1946. On April 1, 1947, the defendant, John J. Holly, was sentenced. Sentence—"To pay the costs of prosecution and undergo an imprisonment in the Western Penitentiary for an indeterminate period of not less than one year and not more than five years, to commence and be computed from the expiration of the amended sentence this day imposed at No. 21/152 September Term, 1946."

The total amount of the sentences imposed on said three indictments, since the sentences were to run consecutively, was commitment of the defendant to the Western Penitentiary for a minimum period of not less than six years and a maximum period not to exceed fifteen years. In addition thereto, the defendant is subject to the imposition of sentences on the other counts of said indictments at the will of the Court since no sentences were imposed for those offenses in connection with which a commitment to the penitentiary was not authorized under the law of the Commonwealth of Pennsylvania.

This Court has read the complete transcript of the trials which were held as they relate to Indictments 21/152 September Term, 1946, and 25/156 September Term, 1946. No trial record was made in the trial of Indictment 13/109 September Term, 1946.

The defendant, through his counsel filed motions for a new trial and/or arrest of judgment as to Indictments 21/152 and 25/156 September Term, 1946. The motions were argued by the defendant personally and his able counsel before the court en banc, and on February 26, 1947 the motions were refused.

From a reading of the transcript of said trials, I do not see how the Court could, have reached any other conclusion since unquestionably the record contains testimony sufficient to support the verdicts of the jury. Furthermore, the records are devoid of error in every respect and the defendant's day in court was fully and thoroughly protected by his legal counsel and the trial judge. The defendant did not appeal to the Superior Court of the Commonwealth of Pennsylvania, which was the appellate tribunal to whom an appeal is presented in the Commonwealth of Pennsylvania, in the first instance, for criminal offenses of the nature set forth in the indictments.

On March 22, 1948, a petition for writ of habeas corpus was filed in the Supreme Court of the Commonwealth of Pennsylvania, all of which more fully appears at Miscellaneous Docket No. 1531. On April 15, 1948, by per curiam order, the writ was refused. On May 14, 1948, a petition for writ of habeas corpus was filed in the United States District Court for the Western District of Pennsylvania at No. 147 Habeas Corpus, and said petition was denied by another member of this Court. On June 29, 1948, a petition for writ of habeas corpus was filed in the Court of Common Pleas of Allegheny County, Pennsylvania, at No. 2874 July Term, 1948. After consideration thereof, on July 29, 1948, the petition for writ of habeas corpus was refused, and no appeal was filed with any appellate court of the Commonwealth of Pennsylvania. On August 31, 1948, a petition for writ of habeas corpus was filed in the Superior Court of the Commonwealth of Pennsylvania at No. 210 Miscellaneous Docket. On September 27, 1948, the petition for writ of habeas corpus was refused. On October 18, 1948, a petition for writ of habeas corpus was filed in the United States District Court for the Western District of Pennsylvania, at No. 149 Habeas Corpus, and this petition was withdrawn by John Holly on October 29, 1948.

On November 16, 1948, a petition for writ of habeas corpus was presented to the Clerk of the United States District Court for the Western District of Pennsylvania, and the matter now before the Court relates to the consideration and disposition which should be made of said petition.

The petitioner has labored the courts with petitions of a similar nature for a period of approximately a year. In order that the alleged denial of constitutional rights can be finally adjudicated and one court or the other will not be subject in the future to a continued harrassment with matters of a similar nature, I have considered the various claims in detail.

Question I—Was the petitioner denied the protection of the Fourth Amendment to the Constitution? U.S.C.A.Const.Amend. IV.

It is contended that he was arrested July 11, 1946, without a warrant; was not informed as to the cause of arrest; was taken to another city, lodged in jail, denied counsel, held incommunicado and on July 13, 1946, was transferred to Fayette County Jail; was unable to obtain counsel until July 15, 1946; was not given a preliminary hearing before a magistrate until July 17, 1946; that arresting officers without search warrants entered his residence, seized his automobile and entered several garages of petitioner, and appropriated $1500 in United States currency, personal papers, books, tools, etc.

■ Petitioner herein was under no coercion when he appeared in court and no confession was secured from him. Allowance of a writ upon the basis of this allegation would constitute a punitive measure against unrelated wrongdoing by the police. These are not the purposes of a writ of habeas corpus. Power to grant such a writ is not to be used as an indirect mode of disciplining misconduct. United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; Slaughter v. Wright, 4 Cir., 135 F.2d 613.

■ Where a person is deprived of his liberty by the arresting officers, lodged in a cell and held in custody incommunicado and brutally beaten, for purpose of having petitioner make confession of guilt, this is not sufficient to justify issuance of writ of habeas corpus where no confession had been received or offered in evidence. Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d

857, certiorari denied, 325 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003.

■ Where an accused is arrested without warrant and held incommunicado without charge or indictment until several weeks thereafter, during all of which time the defendant protests his innocence, and no incriminating statements were made during the said period, or no claim was made that this illegal incarceration in any way affected the subsequent trial, this is not ground for collateral attack in habeas corpus on the judgment. Hampson v. Smith, Sup't. of State Penitentiary, 9 Cir., 153 F.2d 417, certiorari denied, 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623.

■ Where a defendant is convicted in a state court of a non-capital offense on a plea of guilty and had been held incommunicado for a period of forty hours between his arrest and his plea of guilty, this has no bearing on the validity of his conviction—particularly when he makes no allegation that the circumstances of his detention induced his plea of guilty. Townsend v. Burke, Warden, 334 U.S. 736, 68 S.Ct. 1252.

In petitioner's first trial under Indictment No. 21/152, he was not called to testify in his own defense. However, petitioner was called in his own defense during his second trial on Indictment No. 25/156, and here it seems for the first time did he indicate unusual treatment on behalf of the police and even then in no degree as he now wishes to present to this Court. His counsel asked him (in reference to an alibi) whether or not he had heretofore told the police what he had then testified to, his answer was "No, I didn't." The next questions and answers follow:

"Q. Well, did he (policeman) ask you anything about it? A. He did but their treatment when they first arrested me, I didn't think it was best to say anything to them until I came to court.

"Q. I think they even had you down around Allegheny County, didn't they? A. So they claimed.

"Q. Well, were you down around there? A. Oh, I have been down there quite a bit."

Petitioner's plea for relief is based on the case of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. The rule there applied was one against the use of confessions obtained during illegal detention and it was limited to federal courts, to which it was applied by virtue of our supervisory power. Townsend v. Burke, supra; United States v. Mitchell, supra.

■ It is apparent that petitioner and his counsel had ample opportunity during the trials to present whether the illegal incarceration of petitioner in any way prejudiced or affected his right to a fair and impartial trial. It is evident no effect was had on said trials and, therefore, cannot at this time be considered by this court. Hampson v. Smith, supra.

■ I do not believe the acts complained of in answer to Question I constitute a denial of the rights set forth by the Fourth Amendment to the Constitution.

Question II—Was the petitioner denied the protection of the Fourth and Fifth Amendments to the Constitution where evidence was admitted in the trials which was secured without a search warrant?

The petitioner contends that the evidence seized from his home and various garages without a warrant was used to obtain convictions; that it amounted to him being required to be a witness against himself.

■ The jurisdiction of the court cannot hinge upon the mere right or wrong of a ruling on the admissibility of evidence during the course of a trial. Price v. Johnston, 9 Cir., 125 F.2d 806, certiorari denied, 316 U.S. 677, 62 S.Ct. 1106, 86 L.Ed. 1750, rehearing denied 316 U.S. 712, 62 S.Ct. 1289, 86 L.Ed. 1777.

No objection was made by the petitioner to the admission in evidence of the information secured through the search and seizure during the trials.

In the trial of two cases no objection was offered by the defendant to the admission in evidence of any item secured by the state officers through the alleged unlawful searches and seizures.

■ Where questionable evidence is received, it does not deprive the court of

jurisdiction so that the convicted person thereafter, whenever he sees fit, can launch a collateral attack upon a judgment, valid upon its face.

■ Mere errors or irregularities in a judgment or proceeding of a court under and by virtue of which a person is imprisoned, which are not of such a character as to render the proceeding void, cannot be raised on an application for a writ of habeas corpus. Graham v. Squier, Warden, 9 Cir., 132 F.2d 681, certiorari denied 318 U.S. 777, 63 S.Ct. 830, 87 L.Ed. 1145; Price v. Johnston, supra.

■ The petitioner's argument relative to the prejudice which it is claimed exists as a result of the search and seizure of his garages, without a search warrant having previously been issued, should be evaluated by reference being had to the existing law in the Commonwealth of Pennsylvania.

P.S.Pa.Const. Art. I, § 8, provides that "The people shall be secure in their persons, houses, papers and possessions *from unreasonable searches and seizures,* and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." (Italics supplied)

■ Under the provisions of the state constitution, although the members of the state police were not acting under legal authority, and the searches and seizures were without warrant, the petitioner would not have been entitled to have the evidence suppressed at the trial. The admissibility of the evidence of the seized property is not affected by any illegality of the means through which it was obtained. Admissibility of the evidence must be found on grounds other than the means by which it was procured. No constitutional barrier exists in the Commonwealth of Pennsylvania to the offering of evidence against one charged with crime although it has been obtained as a result of an unlawful search and seizure. Commonwealth v. Dugan et al., 143 Pa.Super. 383, 18 A.2d 84.

■ Where a search warrant is illegally issued in the Commonwealth of Pennsylvania, or if the officer exceeded his authority, although the officer might be liable for the wrong done, if the evidence is pertinent to the issue, it does not justify the exclusion. Commonwealth v. Rubin, 82 Pa.Super. 315, 327; Commonwealth v. Dugan, supra.

■ The admissibility in evidence against persons charged with crime in the Commonwealth of Pennsylvania is not affected by the fact that the property was obtained by the police authorities as the result of an unlawful search and seizure. Article I, Section 8, of the Constitution does not forbid searches and seizures without a warrant, but is directed only against unreasonable searches and seizures. Commonwealth v. Dugan, supra.

■ The admission of evidence seized without a search warrant by state officers and admitted as evidence in a state court trial does not violate "due process of law clause" in the Fourteenth Amendment to the Constitution of the United States. The Fourth and Fifth Amendments to the Constitution of the United States have reference to powers exercised by the government of the United States and not to those of the states. Commonwealth v. Dabbierio, 290 Pa. 174, 178, 138 A. 679; Commonwealth v. Dugan, supra; McIntyre v. State, 190 Ga. 872, 11 S.E.2d 5, 134 A.L.R. 813, certiorari denied 312 U.S. 695, 61 S.Ct. 732, 85 L.Ed. 1130.

It has been consistently recognized that the federal government may avail itself of evidence obtained by state officers even though such evidence may be obtained by unlawful search and seizure. A distinction has been drawn between the limitations of the Fourth Amendment in its different spheres of operation on the federal government and the states. The right of the federal government to avail itself of evidence improperly seized by state officers operating entirely upon their own account is not questioned by the Supreme Court of the United States. Byars v. United States, 273 U.S. 28, 33, 47 S.Ct. 248, 71 L.Ed. 520; Gambino v. United States, 275 U.S. 310, 48

S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381; Feldman v. United States, 322 U.S. 487, 492, 65 S.Ct. 26, 89 L.Ed. 646; Screws v. United States, 325 U.S. 91, 144, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330.

I, therefore, do not believe that the admission in evidence of the articles, records, or data secured by the members of the Pennsylvania State Police, through the alleged unlawful search and seizure, amounts to a denial of any rights given by the provisions of either the Constitution of the United States or the Constitution of the Commonwealth of Pennsylvania. The evidence, unquestionably, was relevant and material to the issues and was properly identified.

Question III—Is there a denial of the rights set forth by the Fourteenth Amendment of the Constitution where a conviction is based on disputed questions of fact?

Petitioner contends that the motor vehicle set forth in indictment at No. 21/152 September Term, 1946, was not at anytime before or after trial, conviction and sentence reported to have been stolen property. Petitioner contradicts this statement in the last paragraph, page 9 of his petition and brief, wherein he sets forth the following:

"Permit the petitioner to call to the attention of the Honorable Court that the automobile in question involved at case No. 21/152 *was alleged by the owner to have been stolen in Cleveland, Ohio.*" (Emphasis supplied)

Further, during the trial of the case under Indictment No. 21/152, after the owner of the automobile testified that it had been stolen from a parking lot on April 19, 1946, on page five of the testimony the following questions and answers appear:

"Q. Well, did you report this incident to the police? A. Yes, sir.

"Q. Right away? A. Yes, sir.

"Q. Did you give the police a description of your car and so on? A. Yes, sir.

The question raised has no basic reason or foundation, and where disputed questions of fact exist in the trial of a criminal proceeding, a conviction based thereon does not constitute a denial of the protection of the Fourteenth Amendment.

Question IV—Where the subject of a crime passes through more than one jurisdiction or state, is there a denial of the protection of the Sixth Amendment to the Constitution where a prosecution is lodged in the jurisdiction where the defendant took part in the commission of a crime?

Petitioner's argument is predicated upon the assumption that since the cars were stolen in states outside the Commonwealth of Pennsylvania and either returned to the owners or found outside Fayette County, Pennsylvania, no basis exists to support a conviction in Fayette County, Pennsylvania.

There was ample evidence both direct and circumstantial to show that the motor vehicles in question were at one time or another under the control and in possession of petitioner in Fayette County, Pennsylvania, and the question of being prosecuted there by the Commonwealth of Pennsylvania raises no serious problem at this time. Juries passed on the question and found him guilty. Venue is an element to be established by evidence at the trial of a case. The question of the locus of a crime involves consideration of the evidence. It is a question for determination by the trial court and jury and cannot be reviewed on habeas corpus. Rodman v. Pothier, 264 U.S. 399, 44 S.Ct. 360, 68 L.Ed. 759; Vigoretti v. Hill, D.C., 18 F.Supp. 337, affirmed 3 Cir, 107 F.2d 1023.

There is ample evidence in the record to support the guilt of petitioner. There was no denial of any rights given by the Sixth Amendment to the Constitution.

Furthermore, the Sixth Amendment of the National Constitution applies only to trials in federal courts. The due process clause of the Fourteenth Amendment does not incorporate, as such, the specific guarantees found in the Sixth Amendment although a denial by a state of rights or privileges specifically embodied in that and others of the first eight Amendments may, in certain circumstances, or in connection with other elements, operate in a given case, to deprive a litigant of due

process of law in violation of the Fourteenth Amendment. Due process of law is secured against invasion by the federal government by the Fifth Amendment, and is safeguarded against state action in identical words by the Fourteenth Amendment. The court, therefore, believes that petitioner has not been deprived of any rights. Betts v. Brady, 316 U.S. 455, 461, 62 S.Ct 1252, 86 L.Ed. 1595.

Question V—Does a denial of the rights set forth in the Sixth Amendment to the Constitution arise where a conviction is based on evidence from which inferences and deductions point to the guilt of the accused?

As previously stated, the Sixth Amendment applies only to trials in federal court. Betts v. Brady, supra.

Regardless of this rule, the reasonable inferences and deductions arising from the testimony point to the guilt of the petitioner.

The petitioner has not been denied any rights given by the Sixth Amendment to the Constitution.

Question VI—Is there a denial of rights given by the Sixth and Eighth Amendments to the Constitution where numerous charges are placed against an accused, and as a result thereof, he is unable to secure bail?

■ As to petitioner's right to bail, he was granted one delay in his trial and was released on reduced bail approximately ten days before his trial. Generally, habeas corpus is not designed for collateral review of matters such as existence of any evidence to support conviction, irregularities in grand jury procedure, departure from statutory grant of time in which to prepare for trial, and other nonjurisdictional errors in trial procedure. See Sunal v. Large, Conn. & W. Va., 1947, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982.

■ Alleged irregularities and improprieties in arrest and treatment of accused prior to trial and in procurement of evidence against him must be urged by way of defense on trial and by appeal, and do not constitute grounds for release by habeas corpus. Young v. Sanford, 5 Cir., 147 F.2d 1007.

■ There was no denial of any rights given by the Sixth and Eighth Amendments to the Constitution due to the several arrests of the petitioner and the setting of bail in connection with which the petitioner could not comply.

Question VII—Is there a denial of rights given by the Fifth and Sixth Amendments to the Constitution where the indictments are returned by the grand jury on the evidence, alone, of the prosecuting officer who it is contended gave heresay, presumptious, biased and prejudicial testimony?

■ Petitioner attacks the indictments under which he was tried in that they were based on heresay, biased and prejudicial testimony. On habeas corpus the court will not examine the information or indictment further than to see that it affords a jurisdictional basis for the conviction. The sufficiency of the indictments is a question for the state courts. Hawk v. Hollowell, D.C., 1 F.Supp. 885; Ex parte Webb, 225 U.S. 663, 32 S.Ct. 769, 56 L.Ed. 1248; Knewel v. Egan, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036; United States v. Pridgeon, 153 U.S. 48, 14 S.Ct. 746, 38 L.Ed. 631.

■ I do not believe the petitioner has been denied any protection afforded by the Fifth or Sixth Amendments to the Constitution.

Question VIII—(a) Did the Court at the time sentence was imposed alter or modify the penalty as provided in the Acts of Assembly under which the petitioner was tried?

■ Where a prisoner, seeking discharge on habeas corpus, shows in his petition that his imprisonment is by virtue of a judgment of a court, competent to try the offenses for which he is imprisoned on conviction of such offenses, he must, to entitle him to his discharge, show the nullity of such judgment, or that he has served the sentence. In re Greenwald, C.C., 77 F. 590.

■ Even if sentences imposed upon petitioner were greater than the law permitted, district court, which had not imposed them, could not, upon petition for habeas corpus, order their correction. Terrell v. Biddle, 8 Cir., 1943, 139 F.2d 32,

certiorari denied Terrell v. Pescor, 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083, rehearing denied 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593; Holiday v. Johnston, 313 U.S. 342, 349, 61 S.Ct. 1015, 85 L.Ed. 1392.

■ The sentences imposed by the court were in accordance with existing law in the Commonwealth of Pennsylvania.

Question VIII—(b) Is there a denial of due process under the Constitution where the petitioner, after conviction, was sentenced by the trial court without the presence of his counsel, although request was made for counsel to be present?

■■ Petitioner was represented by counsel throughout his trial. However, he now claims that insofar as his counsel was not present when he was sentenced, that this constitutes error. The various courts have gone as far as holding that there is no absolute requirement that a defendant be even represented by counsel and the mere fact that an accused was not represented by counsel is not in itself, alone, a sufficient basis for granting a writ. Dorsey v. Gill, supra; Betts v. Brady, supra. Petitioner further charges neglect and indifference on the part of his counsel. Mere general assertions of incompetency or disinterest do not constitute a prima facie showing required by statute to support a petition for habeas corpus. Dorsey v. Gill, supra.

■ At the time sentences were imposed, the Court afforded the petitioner an opportunity to be heard. The absence of petitioner's counsel caused him no prejudice or denial of constitutional rights. This is not such an extreme case which amounts to a denial of fair trial so as to justify release of petitioner. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667.

I do not believe the sentences were imposed in violation of the provisions of the Acts of Assembly in the Commonwealth of Pennsylvania, and there has been no denial of rights provided by any terms of the Constitution.

The petitioner generally complains of two other matters in his petition which should be considered in order that a determination can be made of all questions which have been presented.

He sets forth that he was summoned to trial December 10, 1946 at Case No. 21/152, and before the jury returned its verdict he was ordered to trial on Case No. 25/156, and that jurors which sat through the entire case of the first trial were called to sit on his second trial. No motion for a continuance was made in behalf of the petitioner; the granting or refusing such motion based on objections to the jury is largely discretionary with the trial court. Further, an objection that the jurors have heard the evidence in a previous case against accused, or in a similar case involving the same evidence or witnesses, does not necessarily constitute sufficient ground for a continuance. 22 C.J.S., Criminal Law, § 500.

■ Although many of the jurors in the panel may have heard the evidence in the previous trial, there is nothing in the record to establish any prejudice against the petitioner. Commonwealth v. Celli, 153 Pa.Super. 88, 33 A.2d 97; Commonwealth v. Spallone, 154 Pa.Super. 282, 35 A.2d 727.

Petitioner claims that he should have been tried in the United States Court under the National Stolen Property Act, 18 U.S.C.A. § 413 [now § 2314]. The Court is of the opinion that petitioner is referring to the National Motor Vehicle Theft Act, 18 U.S.C.A. § 408, [now §§ 2311–2313], the last sentence of which provides "Any person violating this section may be punished in any district in or through which such motor vehicle has been transported or removed by such offender."

■ Although the petitioner could have been prosecuted under the federal law, this does not bar the state from prosecuting an offender where he has violated a state law.

■ Also, in Petitioner's trial at No. 13/109 September Term, 1946, no testimony was taken. Therefore, since the court has not been furnished with a transcript of the record, it is unable to determine whether petitioner was denied procedural due process in this trial. See Dorsey v. Gill, supra.

The petitioner sets forth the names of certain witnesses he wishes to have sub-

872

pœned. He states that three of these will testify as to the illegal search without a warrant of his home, garage and other building rented by him. What has been said heretofore relative to search without a warrant is applicable in connection herewith and nothing can be gained by calling such witnesses. Petitioner wishes to subpœna another witness who will testify that the 1942 Dodge Sedan was inspected by his garage and an official inspection sticker was affixed thereon and that no number alterations appeared thereon. This testimony was brought out in petitioner's trial. Since petitioner's counsel delved into this subject at the time of trial, it is apparent that he could have inquired further if he saw fit to do so. Petitioner also wishes to call a witness who will testify that an official inspection sticker was affixed by his garage to the 1942 Pontiac in question, and that no number alterations, motor or serial, appeared thereon. If petitioner is referring to the official sticker being altered, there is no evidence in the case concerning this sticker. If he is questioning the alteration on the motor, this should have been done during the trial. The last witness that petitioner wishes to call is one who will attempt to show the court's lack of jurisdiction. The question of jurisdiction has also been discussed elsewhere in this opinion, and the witness could not by any testimony alter petitioner's present position.

In my opinion, this is not one of the rare cases where exceptional circumstances of peculiar urgency are shown to exist such as would require the federal courts to interfere with the administration of justice in the state courts, and discharge the petitioner through a habeas corpus proceeding. Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572.

The petitioner's application for leave to file in forma pauperis a petition for writ of habeas corpus is allowed. However, it is ordered that the petition for a writ of habeas corpus and the petition to subpœna witnesses is hereby denied since it appears from the application that the petitioner is not entitled to the issuance of the writ. 28 U.S.C.A. § 2243.