## ANDERSEN *v.* TREAT.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF VIRGINIA.

No. 415. Argued November 8, 1898. — Decided November 14, 1898.

The principle that a writ of *habeas corpus* cannot be made use of as a writ
of error is again announced and affirmed.

Where a petition for a writ of *habeas corpus* is founded upon judicial pro-
ceedings which are claimed to be void, and those proceedings and the
records thereof are insufficiently set forth in the petition, the originals
may be referred to on the hearing.

It appearing on examination of the original record and proceedings that
the contention of the petitioner as to the facts is not supported by them,
this case comes within the general rule that the judgment of a court
having jurisdiction of the offence charged and of the party charged with
its commission is not open to collateral attack; and it is held that the
District Court could not have done otherwise than deny the writ, and its
order in that respect is affirmed, and the mandate ordered to issue at
once.

JOHN Andersen was indicted in the Circuit Court of the
United States for the Eastern District of Virginia at the
November term thereof, A.D. 1897, and, December 23, 1897,
convicted of the murder, on August 6, 1897, on the high seas,
of William Wallace Saunders, mate of the American vessel
Olive Pecker, and sentenced to death. The case was brought
to this court on error and the judgment was affirmed May 9,
1898. 170 U. S. 481. The mandate having gone down, exe-
cution of the sentence was fixed for August 26, 1898. On
that day, (H. G. Miller and P. J. Morris assuming to act as
his counsel,) Andersen filed a petition in the District Court of
the United States for the Eastern District of Virginia, pray-
ing for a writ of *habeas corpus*, on the ground that he was
held in custody for execution "in violation of the laws and
the Constitution of the United States of America," in that
he had been deprived "of the free exercise of his rights to
be represented by counsel, in accordance with article 6 of the
Amendments of the Constitution of the United States."

The petition stated:

"Your petitioner represents that on the 7th day of November, 1897, he was delivered to the United States marshal for the Eastern District of Virginia, charged with having committed the crime of murder within the maritime jurisdiction of the United States of America; that as a prisoner of the said United States marshal he was confined on the day of his delivery in the city jail in the city of Norfolk to await his examination, as provided by law, before the United States commissioner for the Eastern District of Virginia; that on that day, viz., the 7th day of November, 1897, while thus detained in the city jail of the city of Norfolk, he employed as counsel to represent him one P. J. Morris, an attorney at law, residing in the city of Norfolk, Virginia.

"Your petitioner further represents that after securing the services of the said Morris, on the same day the said Morris called at the city jail (the place of the detention of your petitioner) and asked permission to see your petitioner to consult with him as attorney and client. Your petitioner represents that admission was refused my said attorney, for the reason that the district attorney of the United States for the Eastern District of Virginia had instructed the jailor and others in charge of your petitioner to allow no one, without exception, to see your petitioner; whereupon your petitioner represents that on the 7th day of November, 1897, my said attorney asked permission, by phone, of the district attorney for the Eastern District of Virginia, to permit him to visit the said jail and consult with your petitioner; that said application was refused, and that on account of the order of the district attorney lodged with the jailors and keepers of the prison in which your petitioner was detained, your petitioner was denied the right of the assistance of counsel to represent your petitioner.

"Your petitioner further represents that the district attorney for the Eastern District of Virginia informed your petitioner's counsel on the night of the 7th of November, 1897, that he would let him know on the following day whether or not permission would be granted your petitioner's counsel to consult

with your petitioner. Your petitioner represents that instead of informing my said attorney and giving my said attorney full notice as to the time when your petitioner's preliminary hearing would be held, and before the United States district attorney for the Eastern District of Virginia had given my said attorney permission to consult with me, I was taken in irons, handcuffed, to the office of the United States commissioner and examined, without aid or presence of my attorney. Your petitioner further represents that before the time the said examination was completed and statements made by me were finished, my said attorney discovered that said examination was going on without his presence and before any consultation could be held between your petitioner and his said attorney, and my said attorney thereupon applied to the said district attorney of the United States and to the Honorable Robert W. Hughes, late judge for the Eastern District of Virginia, and was told by them that, as the defence of your petitioner was inconsistent with the defence of others charged at the same time with complicity in the destruction of the vessel, Olive Pecker, that any attorney representing both prisoners was objectionable, and that the court would not permit the same attorney to represent both your petitioner and the other prisoners, and therefore the court would assign him an attorney to represent him. Your petitioner therefore represents that he was deprived of the free exercise of his rights to be represented by counsel, in accordance with article 6 of the Amendments of the Constitution of the United States, and that therefore the action of the court in depriving him of the right to select his own counsel the court exceeded its power and jurisdiction, and that therefore the trial and proceedings therein are null and void, and that the judgment and the sentence of the court are void and in violation of his constitutional rights, as he will show."

The matter came on for hearing on the petition, together with an order and certain papers, which were made part of the proceedings by consent of parties, and were as follows:

1. The order was entered by District Judge Hughes on December 14, 1897, *nunc pro tunc* as of November 8, and

read : "The court having, on the 8th day of November, 1897, upon its own motion, as well as upon the request of the accused, John Andersen, assigned George McIntosh, Esq., as counsel for the said John Andersen, under and by notice of sec. 1034 of the Revised Statutes of the United States, and it appearing to the court that he has since then performed the duties of such counsel and has been recognized as such by this court in all proceedings had herein.

" And it further appearing that no entry of said assignment was made in the minutes of this court for the said 8th day of November, A.D. 1897, it is hereby ordered that the said assignment be now entered by the clerk of this court as of the said 8th day of November, A.D. 1897."

No indictment had been found November 8, but the *nunc pro tunc* order of December 14, referred in its title to five indictments against Andersen, numbered 234, 235, 236, 239 and 240, two of said indictments being for arson on the high seas ; two of them for the murder of Saunders ; and one for the murder of John W. Whitman.

2. A statement dated at Norfolk, Virginia, November 9, 1897, and signed by P. J. Morris, as counsel for Horsburgh, Lind, Barrial, Barstad and March, which, referring to the United States District Attorney, declared :

" Mr. White, in this case, as in all others, has shown me the utmost consideration. Yesterday morning, when I went up to the office of Mr. White, I found he was about to examine the prisoners, and told him that I expected to be employed by them. Mr. White informed me that he had not himself talked with the men, and that it was imperatively necessary that he should do so in order to judge which would be indicted and which might be needed only as witnesses; that as soon as he had completed that and the men had employed me, they would be at my disposal. I acquiesced in the propriety of this position. The men were in custody of the United States marshal and in the United States marshal's room after this preliminary examination, which I understand was voluntary on the part of the prisoners, and before it was finished I applied to Judge Hughes to give me permission to

see the men, who were then in the United States marshal's custody and in his office.   This was done, and five of the men then in writing employed me, and I then gave this writing to Mr. White.

"I desire distinctly to say that in this matter Mr. White has done nothing which justifies any criticism on my part, and I have to thank him in this, as in other matters, for courtesies of a very considerate character."

3.  The writing referred to was dated November 8, addressed to the judge of the United States court at Norfolk, and signed by Horsburgh, Barstad, March, Barrial and Lind, who thereby authorized "P. J. Morris to represent us in all the courts of the United States in any and all cases pending against us and to be presented against us connected with the charges against us growing out of the burning of the vessel O. H. Pecker."

4.  A letter addressed to P. J. Morris, attorney at law, dated at Norfolk, November 7, 1897, signed by Horsburgh, March, Barstad, Lind and Barrial, stating: "We desire counsel and request an interview with you, in order to arrange for our defence of charge now pending in the court of the United States."   This note was endorsed by Judge Hughes, November 8, 1897, as follows: "The prisoners mentioned in this paper are entitled to be seen at any time and at all times by their counsel.   Mr. P. J. Morris is hereby authorized to see and confer with these prisoners whenever he or they think fit."

The District Court denied the writ of *habeas corpus* prayed for, and ordered the petition to be dismissed, whereupon an appeal was allowed petitioner to this court, and a transcript of the petition, the final order and all other proceedings in the cause were directed to be forwarded to its clerk.   The final order concluded in these words: "And the court further certifies as a part of this order that although indictment No. 241, under which the petitioner, John Andersen, was tried and convicted of murder, was not one of the number embraced in the order of the 14th of December, 1897, assigning said McIntosh as counsel, that still said McIntosh, under said order and pursuant to the assignment of the court, continued

to represent the said Andersen upon his trial in the Circuit Court of the United States and upon his appeal in the Supreme Court of the United States on trial of the said indictment No. 241."

*Mr. Hugh G. Miller* and *Mr. P. J. Morris* for appellant. *Mr. J. G. Bigelow* was on their brief.

*Mr. William H. White* for appellees.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The rule that the writ of *habeas corpus* cannot be made use of as a writ of error being firmly established, the contention of appellant's counsel is that the judgment of the Circuit Court, the judgment of this court and the action of the Circuit Court in pursuance of our mandate, are wholly void because he was denied " the assistance of counsel for his defence," that is, the assistance of counsel of his own selection.

The petition was insufficient in not setting forth the proceedings, or the essential parts thereof, prior to August 26, 1898, on which day it was presented, and it was very properly conceded on the hearing of this appeal that the record of Andersen's trial and conviction and of the proceedings on error was to be treated as part of the record, and it was referred to by counsel on both sides accordingly. *Craemer* v. *Washington State*, 168 U. S. 124, 128.

The record disclosed that on Monday, the 8th of November, 1897, the day after Andersen had been delivered into the custody of the marshal, George McIntosh, Esq., was assigned to him as counsel upon his own request and in accordance with section 1034 of the Revised Statutes; and that Mr. McIntosh actually represented him from thence onward, contesting every step of the way, until, after having obtained a writ of error from this court, and argued the cause here, his petition for a rehearing was denied.

But the petition averred that on November 7 petitioner had

"employed as council to represent him, one P. J. Morris;" that on the same day Morris called at the place of detention and asked permission to see petitioner for consultation, which was refused; that petitioner's preliminary examination was had without the aid or presence of his attorney; and that the district judge and the district attorney told his said attorney that as petitioner's defence was "inconsistent with the defence of others charged at the same time with complicity in the destruction of the vessel Olive Pecker," the court would not permit the same attorney to represent them all.

The contention seems to be that petitioner was denied, at any rate in the first instance, the assistance of the attorney he had selected, and that he did not have his attorney with him when he told his story November 8; and that, as he was thereby deprived of fundamental constitutional rights, all subsequent proceedings were void for want of jurisdiction.

The papers introduced before the District Court, by consent, tended to show that Morris had not been employed by Andersen prior to November 8; that the five members of the crew other than Andersen authorized Morris on that day to represent them; that the district attorney had had no interview with any of the prisoners up to the morning of November 8, which he informed the attorney it was imperatively necessary in view of future action that he should have, and then if the prisoners employed him they would be at his disposal.

Apart from that evidence, however, the record of the trial showed that examination before the United States commissioner was waived by the accused; that the trial lasted several days, during which no other counsel applied to the court for leave to act for Andersen, nor did Andersen request the court to permit any other counsel to conduct or assist in conducting his defence; that Andersen admitted that the statement he made on November 8 was a voluntary one; that no such statement was put in evidence; nor was any objection raised to questions propounded to Andersen when on the stand as to what he had said on that occasion; nor were witnesses called to contradict his answers.

The record did not show, nor was there any pretence that the court was requested to assign Morris as counsel for Andersen and denied the request, and if it were true that the district judge or district attorney suggested that it would be objectionable to do so in view of his employment by the other five members of the crew, even though coupled with the intimation that the court would decline on that ground to make such assignment, the fact was not material on this application.

In *Commonwealth* v. *Knapp*, 9 Pick. 496, the Supreme Judicial Court of Massachusetts refused to make a desired assignment because the person designated was not a member of the bar of that court, and also because "a person of more legal experience ought to be assigned, who might render aid to the court as well as to the prisoner;" but the question under what circumstances a court may in a given case decline to assign particular counsel on the request of the accused, was not discussed.

In the case of *Shibuya Jugiro*, 140 U. S. 291, 296, the alleged assignment at Jugiro's trial "of one as his counsel who (although he may have been an attorney at law) had not been admitted or qualified to practise as an attorney or counsellor at law in the courts of New York," was held to be matter of error and not affecting the jurisdiction of the trial court.

The general rule is that the judgment of a court having jurisdiction of the offence charged and of the party charged with its commission is not open to collateral attack. The exceptions to this rule when some essential right has been denied need not be considered, for whether this application was tested on the petition alone, treating the record as part thereof, or heard, without objection, as on rule to show cause, the District Court could not have done otherwise than deny the writ. *In re Boardman*, 169 U. S. 39.

*Order affirmed. Mandate to issue at once.*