## TAYLOR v. UNITED STATES.

### No. 3209.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

---

R. Palmer Ingram and Helen Elizabeth Brown, both of Baltimore, Md. (Samuel S.

Levin, of Baltimore, Md., on the brief), for appellant.

Simon E. Sobeloff, U. S. Atty., of Baltimore, Md. (James M. Hoffa, Asst. U. S. Atty., of Baltimore, Md., on the brief), for the United States.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

Appellant, hereinafter referred to as the defendant, was convicted in the District Court of the United States for the District of Maryland of having possession of intoxicating liquor in violation of the National Prohibition Act (title 2, § 3 [27 USCA § 12]). The indictment alleged two former convictions against the defendant.

By agreement, the defendant was tried by the court, sitting as a jury, found guilty as charged in the indictment, and sentenced to be imprisoned three months in jail and to pay a fine of $750 and costs. From this judgment this appeal was brought.

A squad of several prohibition agents, attached to the Baltimore office, in charge of one, Ford, deputy prohibition administrator, having had complaints against the property and information to the effect that liquor was being stored there in violation of the laws of the United States, went to a garage located on Curtis avenue, in the city of Baltimore. On arriving at the premises, the officers smelt whisky in the building, which was located in a yard some distance from a house used as a dwelling by the defendant; the garage being on Curtis avenue, and a small alley running along its side. A fence ran from the garage to the house.

After smelling the whisky, the officers testified they looked under and through a crack in the door of the garage and saw a number of cases of cartons, such as, according to the experience of the agents, are used to hold Mason jars, much used for carrying whisky. The officers then entered the garage by a side door, pulling out a staple that held a hasp, and found in the building, contained in the cartons, 732 gallons of whisky. While the officers were searching the building, the defendant appeared and denied that the whisky was his, or that he knew anything about it; but afterwards admitted that it was his. The officers knew that the defendant had been previously convicted of violating the National Prohibition Act.

On the trial, objection was made to the evidence of the officers on the ground that their knowledge was acquired by an unlawful search.

This court has frequently discussed the issue raised by this appeal. In Henderson v. United States (C. C. A.) 12 F.(2d) 528, 51 A. L. R. 420, in an able opinion Judge Parker held the search unlawful because the officers had entered the building, used in part as a dwelling, without sufficient cause. Again in De Pater v. United States, 34 F.(2d) 275, 276, 74 A. L. R. 1413, this court held that the officers did not have sufficient cause to enter the building (a dwelling house). But in that case the court said: "It is too well determined to require argument that knowledge of a crime may be acquired through the sense of smell alone."

In Benton v. United States (C. C. A.) 28 F.(2d) 695, an outbuilding, included in the fence around the dwelling, was entered by the officers after they saw and heard that which led them to believe the law was being violated. The circumstances in the Benton Case are almost identical with the instant case, and this court held the search was justified and lawful.

In the Benton Case will be found a discussion of the authorities. The doctrine laid down in the leading case of McBride v. United States (C. C. A.) 284 F. 416, is approved. In the McBride Case, the court held that it was lawful to arrest a person without warrant, where a crime is being committed in the presence of an officer; that it is lawful to enter a building without a warrant within which such crime is being perpetrated; and that, where an officer is made aware by any of his senses that a crime is being committed, it is being committed in his presence, so as to justify an arrest without a warrant.

Again this court, in the case of Mulrooney et al. v. United States, 46 F.(2d) 995, 996, held a similar search to be lawful. The building in the Mulrooney Case was used in part as a dwelling. The officers, as here, were led by the sense of smell to look through the transom over the door and saw what they took to be a barroom. They then entered and searched the building. The court said: "To the knowledge that a crime was being committed, acquired by the sense of smell, was added the knowledge acquired by the sense of sight, when the agent looked through the open transom. The knowledge thus acquired was confirmed after entry of the agents and before any search by the admission of Mulrooney. No objection was made by Mulrooney to the search of that part of the premises used as a dwelling. The facts and cir-

cumstances before the officers were such as to warrant men of prudence and caution in believing that the offense had been committed, and they were justified in their actions."

Here the defendant had the reputation of being a violator of the National Prohibition Law. The officers knew he had been convicted of such a violation. Complaints had been made to them about the garage being used for the storing of whisky used in such violations. The sense of smell directed them to the building, and, before entering it, what they saw from the outside confirmed their prior knowledge. After entering they found a large quantity of unlawful liquor, the possession of which could only mean one thing; that the law was being violated, and in a wholesale way. Such a quantity of whisky could only be stored in this garage for the purpose of making many sales; each a felony under the law. The garage was not directly connected with the dwelling house.

In United States v. Lorenz (D. C.) 17 F. (2d) 829, 830, the court said: "A dwelling house affords no sanctuary to crime, no exemption from taxes, no refuge for criminals and their activities, known to be within."

Certainly no sanctity is attached to the garage in this case. The officers were fully justified in what they did, and the search was not unreasonable, as contended, within the contemplation of the Fourth and Fifth Amendments to the Constitution of the United States.

An examination of the following cases will support the conclusion reached by us. United States v. Nobriga et al. (D. C.) 19 F. (2d) 92; Kasprowicz v. United States (C. C. A.) 20 F.(2d) 506; United States v. Berger et al. (D. C.) 22 F.(2d) 867; United States v. Vottiero (D. C.) 25 F.(2d) 346; United States v. Backer (D. C.) 32 F.(2d) 936; United States v. Borkowski (D. C.) 268 F. 408; United States v. Lindsly (D. C.) 7 F. (2d) 247.

The cases cited by the attorneys for appellant are either not in point or not controlling on this court.

█ The question was also raised on behalf of the appellant that the sentence was improper because the record did not properly prove two prior convictions for possession. One of the convictions relied upon by the government was a verdict of guilty under an indictment charging the unlawful possession and manufacturing of intoxicating liquor, where the court sentenced the defendant to five months in jail. It is contended that be-

cause the sentence was one that could only have been given for manufacture and could not have been given for possession the verdict did not have the effect of a conviction for possession. There is no merit in this contention. United States v. Watkinds (C. C.) 6 F. 152; Klein v. United States (C. C. A.) 14 F.(2d) 35.

█ In any event, the sentence in the former case showing a verdict of guilty of possession cannot now be attacked collaterally. Andersen v. Treat, 172 U. S. 24, 19 S. Ct. 67, 43 L. Ed. 351.

Also in the indictment the allegation is made of a former conviction for possession and transportation where the defendant pleaded guilty. There is no attack on the sentence in the latter case.

There was no reversible error in the trial, and the judgment of the court below is accordingly affirmed.