**UNITED STATES ex rel. DARCY v. HANDY, Warden of Bucks County Prison et al.**

No. 257.

United States District Court,
M. D. Pennsylvania.

May 17, 1951.

932

Charles J. Marqiotti, Samuel Goldstein, Pittsburgh, Pa., Morton Witkin, Philadelphia, Pa., J. Dress Pannell, Harrisburg, Pa., for relator.

Randolph Ryder, Deputy Atty. Gen., Willard S. Curtin, Dist. Atty. of Bucks County, Morrisville, Pa., for respondents.

Before WATSON, Chief Judge, and MURPHY, District Judge.

MURPHY, District Judge.

Petitioner, convicted of murder and sentenced to death in the Court of Oyer and Terminer of Bucks County, Pennsylvania, and presently confined in this district, sought on April 3, 1951, a writ of habeas corpus and a stay of execution alleging that the Commonwealth of Pennsylvania denied him a fair and impartial trial and was about to deprive him of his life without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. The Commonwealth moved to dismiss the petition as insufficient at law.

"A conviction after public trial in a state court * * * places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings, that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused. In re Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L. Ed. 154; Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461; Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 579, 85 L.Ed. 830; Hawk v. Olson, 326 U.S. 271, 279, 66 S.Ct. 116, 120, 90 L.Ed. 61. The petitioner has the burden also of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." Darr v. Burford, 339 U.S. 200–218, 70 S.Ct. 587, 597, 94 L.Ed. 761.

Following his conviction June 14, 1948, relator was denied a new trial by opinion and order of the trial court February 16, 1949; his conviction and sentence were affirmed by the Supreme Court of Pennsylvania in opinion by the late Chief Justice Maxey, May 26, 1949—Com. v. Darcy, 362 Pa. 259, 66 A.2d 663, certiorari denied, sub nom Darcy v. Com. of Pennsylvania, 338 U.S. 862, 70 S.Ct. 96, 94 L.Ed. 528; a petition to the Supreme Court of Pennsylvania for a writ of habeas corpus was denied August 12, 1949, certiorari denied, sub nom Com. of Pennsylvania ex rel. Darcy v. Handy, 338 U.S. 862, 70 S.Ct. 96, 94 L.Ed. 528; application for commutation of sentence denied by Pennsylvania Board of Pardons, May 1950; application for re-argument granted June 1950; argued March 20, 1951, denied March 21, 1951; rehearing denied March 21, 1951.

April 2, 1951, petition to the Supreme Court of Pennsylvania, seeking re-argument of the motion for new trial which had been denied May 26, 1949; denied April 3, 1951. Petitioner then sought a writ of habeas corpus in this court.

The only time the precise questions in controversy were raised in the Pennsylvania courts was in the relator's petition for re-argument, denied without opinion April 3, 1951. Cf. Frank v. Mangum, 237 U.S. 309, at page 328, 35 S.Ct. 582, 59 L.Ed. 969. It

was not clear whether the denial was on the merits or on procedural grounds, or whether it constituted a final judgment sufficient to support a petition to the United States Supreme Court for a writ of certiorari. As to the power of the Supreme Court of Pennsylvania to treat a petition for re-argument as a petition for a writ of habeas corpus, see Com. v. Ragone, 317 Pa. 113, at pages 126–128, 176 A. 454; Act of May 22, 1722, 1 Sm.Law 140 and Act of June 16, 1836, P.L. 785, 17 P.S.Pa. § 41. But see United States ex rel. Keener v. Foust, D.C.E.D.Pa., 84 F.Supp. 939, at page 942.

In a petition for habeas corpus to the Supreme Court of Pennsylvania, the questions in controversy could be squarely raised and in the event of denial a way prepared to make application to the United States Supreme Court for writ of certiorari. Uveges v. Com. of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127; Com. of Pennsylvania ex rel. Billman v. Burke, 3 Cir., 170 F.2d 413, at page 417; Application of Baer, 3 Cir., 169 F.2d 770; cf. Com. ex rel. Paylor v. Claudy, 366 Pa. 282, 287, 77 A.2d 350.[1]

Following the teachings and command of Darr v. Burford, supra; Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; United States ex rel. Auld v. Warden of New Jersey State Penitentiary, 3 Cir., 1951, 187 F.2d 615, at page 618; 28 U.S.C.A. § 2254, we suggested to counsel for relator

that a petition for writ of habeas corpus and a stay of execution should be presented to the Supreme Court of Pennsylvania and, in the event of an unfavorable decision, that application be made to the United States Supreme Court for writ of certiorari.

To afford relator an opportunity to comply, a stay of execution already being in effect,[2] and so that the court might study the transcript of the trial proceedings, we recessed the hearing until Tuesday, April 10, 1951.

April 10, 1951, the Supreme Court of Pennsylvania in a per curiam opinion—sub nom Com. ex rel. Darcy v. Claudy, 367 Pa. 130, 79 A.2d 785, 786,—discussed the various contentions of the relator and found the petition to be "wholly without merit."

Instead of requesting any individual justice of that court or any individual justice of the United States Supreme Court for a stay of execution to afford an opportunity to prepare a petition for a writ of certiorari (see Rules of the Supreme Court of the United States, Rule 38(6), 28 U.S.C.A.; 28 U.S.C.A. § 2101(f); 335 U.S. 915, and see Morgan v. Horrall, 9 Cir., 1949, 175 F.2d 404, at page 407) counsel for relator pursued neither course but appeared before us on April 11, 1951, requesting that we grant the writ or, in the alternative, grant a stay of execution pending proceedings in the United States Supreme Court. See 28 U.S.C.A. § 2251.[3]

---

1. Gusik v. Schilder, 340 U.S. 128, 71 S. Ct. 149, 95 L.Ed. —; and see United States ex rel. Smith v. Warden of Philadelphia County Prison, D.C.E.D.Pa., 87 F.Supp. 339; United States ex rel. Smith v. Baldi, D.C.E.D.Pa., 96 F.Supp. 100; Stonebreaker v. Smyth, 4 Cir., 163 F.2d 498, at page 501; United States ex rel. Pascal v. Burke, D.C., 90 F.Supp. 868, at page 870; United States ex rel. Dugan v. Ashe, 3 Cir., 155 F.2d 17; Powell v. Meyer, 3 Cir., 147 F.2d 606.

2. Judge Follmer, a judge of this Court specially presiding in the United States District Court for the Eastern District of Pennsylvania, on April 3, 1951, fixed a hearing before this Court at Scranton, Pennsylvania, and granted a stay of execution pending disposition of this petition. Meanwhile, the Governor of Pennsylvania by executive order stayed the

execution until after midnight of April 11, 1951.

3. "A justice or judge of the United States *before whom a habeas corpus proceeding is pending, may,* before final judgment or after final judgment of discharge, or *pending appeal, stay any proceeding* against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

"*After the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void.* If no stay is granted, any such proceeding shall be as valid as if no habeas corpus proceedings or appeal were pending. June 25, 1948, c. 646, 62 Stat. 966." (Italics supplied).

"Ex parte Hawk (321 U.S. 114, at pages 116–117, 64 S.Ct. 448, 88 L.Ed. 572) prescribes only what should 'ordinarily' be the proper procedure; all the cited cases from Ex parte Royall (117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868), to Hawk recognize that much cannot be foreseen, and that 'special circumstances' justify departure from rules designed to regulate the usual case. The exceptions are few but they exist. See White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348; Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868. Other situations may develop. Compare Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543. Congress has now made statutory allowance for exceptions such as these, leaving federal courts free to grant habeas corpus when there exist 'circumstances rendering such (state) process ineffective to protect the rights of the prisoner'. 28 U.S.C.A. § 2254." Darr v. Burford, supra, 339 U.S. at page 210, 70 S.Ct. at page 593.

■ Was there anything shown to make relator's situation one of "peculiar urgency", requiring prompt federal intervention? The area must be defined case by case but as yet it is an "unchartered sea". See Note 61 Harv.L.Rev. 657 at 667; Note 50 Col.L.Rev. 856 at 859; Sunal v. Large, 332 U.S. 174, 178–181, 184–187, 188–190, 67 S.Ct. 1588, 91 L.Ed. 1982; United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17, 46 S.Ct. 1, 70 L.Ed. 138; Tinsley v. Anderson, 171 U.S. 101, 104–105, 18 S.Ct. 805, 43 L.Ed. 91; Ex parte Hawk, supra, 321 U.S. 114, 116–117, 64 S.Ct. 448, 88 L.Ed. 572; Johnson v. Wilson, 5 Cir., 131 F.2d 1; 39 C.J.S., Habeas Corpus, § 65(b) (2), page 611; 25 Am.Jur. Tit. Habeas Corpus § 18, p. 155. A bare constitutional question is alone not enough. United States ex rel. Murphy v. Murphy, 2 Cir., 108 F.2d 861, certiorari denied, Murphy v. Warden of Clinton State Prison, 309 U.S. 661, 60 S.Ct. 583, 84 L.Ed. 1009; Knewel v. Egan, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036; United States ex rel. Rogalski v. Jackson, 2 Cir., 146 F.2d 251, certiorari denied 324 U.S. 873, 65 S.Ct. 1011, 89 L.Ed. 1427. "Mere convenience cannot justify use of the writ as a substitute for an appeal." Adams v. United States ex rel. McCann, 317 U.S. 269, at page 274, 63 S.Ct. 236, 239, 87 L.Ed. 268, 143 A.L.R. 435.

■ "In so delicate a matter as interrupting the regular administration of the criminal law of the State by this kind of attack, too much discretion cannot be used, and it must be realized that it can be done only upon definitely and narrowly limited grounds." Mr. Justice Holmes in Ashe v. United States ex rel. Valotta, 270 U.S. 424, at page 426, 46 S.Ct. 333, 334, 70 L.Ed. 662, and see Urquhart v. Brown, 205 U.S. 179, 27 S.Ct. 459, 51 L.Ed. 760.

As we understand it, United States ex rel. Auld v. Warden of New Jersey State Penitentiary, supra, 187 F.2d 615, at page 618, holds that the fact that the relator has been sentenced to death is not sufficient, nor where, in addition to the above, the State Supreme Court has denied the petition on its merits, as long as the avenue of certiorari to the Supreme Court of the United States remains open.

As to the stay of execution, the relator had the provisions of Rule 38 open to him, as well as the possibility of seeking an additional stay from the Governor of Pennsylvania. In addition we were confronted with the provision in 28 U.S.C.A. § 2251 that the effect of a stay would be to make void the proceeding against the relator in the State Court. Perhaps more complete relief would be thus provided than that which would be granted by issuing the writ itself. See 28 U.S.C.A. § 2243. "The court shall * * * dispose of the matter as law and justice require."

■ "If some rational balance is to be preserved in the matter of handling petitions for writs of habeas corpus in Federal District Courts it is proper that petitioners should be required to exhaust available remedies under the present liberal procedure which seems wholly adequate to meet a situation of the character here presented." Morgan v. Horrall, supra, 175 F.2d at page 407.

■ For the foregoing reasons, we refused to grant either the writ or the stay.

What of the motion to dismiss? See concurring opinion of Hastie, J., United States ex rel. Auld v. Warden of New Jersey State Penitentiary, supra, 187 F.2d

at page 621. " * * * judicial power to dismiss a petition on its merits is not destroyed by the statutory limitation on the granting of affirmative relief."

The murder occurred December 22, 1947. David Darcy, 22, Harold Foster, 23, Harry Zietz (shown in petition as Zeitz), 18, and Felix Capone, 16, were apprehended and taken into custody shortly thereafter. Next day they confessed to the murder and to a series of armed robberies in New Jersey and Pennsylvania, in the greater Philadelphia area. Thereafter an outstanding Philadelphia lawyer was consulted on Darcy's behalf and on his recommendation Webster S. Achey, of Doylestown, was employed by a relative of Darcy's on his behalf and, together with one William M. Power, they thereafter were accepted by Darcy and acted as counsel on his behalf.

Relator and the three others were jointly indicted for murder, February 10, 1948. Darcy and Capone respectively sought and were granted a severance of their trial.[4] Zietz and Foster were tried jointly Monday, June 1 to 4, 1948, inclusive. We assume arguendo that when the verdict of guilty with the penalty of death was announced, Judge Boyer, the presiding Judge, told the Jury: "I don't see how you could, under the evidence, have reached any other verdict. Your verdict may have a very wholesome effect on other young men in all vicinities who may come to realize the seriousness of the folly in which so many young men indulge in these days. The only hope of stemming the tide of such crime by youth is to impose the law which you have indicated by your decision." We assume also that next day, June 5, 1948, the "Doylestown Daily Intelligencer", a news-paper in Doylestown, Pennslvania, the County seat (Pop. 5023; County Pop. 1940—107,515; 1950—144,234), where the trial was held, carried the foregoing in a front page story, stating that Judge Boyer had praised the jury for their verdict condemning two killers to the electric chair.

Monday, June 7, 1948, defendant was arraigned, plead not guilty, and was tried before a court and jury with sessions daily from June 7 to 14, inclusive, including one night session and excluding Sunday, and resulted in a verdict by the jury of guilty of murder in the first degree fixing the penalty at death.[5] The transcript of testimony from arraignment to sentence consists of 915 typewritten pages. Throughout the entire proceeding, defendant was represented by Messrs. Achey and Power as his counsel.

Petitioner avers that as a result of the Zietz-Foster trial and verdict, the remarks of the judge, and the newspaper story, "hysteria and prejudice * * * swept the town"; that it was so general as to influence beyond a slight degree the panel of jurors called for the following week from which the jury was to be selected to try the defendant; that "the relator was forced to go to trial" the following Monday in an atmosphere lacking judicial calm, influenced and affected by events of the prior week, and that the panel of jurors was familiar with the events of the prior week and defendant's connection therewith.

At no time prior to commencement of the trial did defendant's counsel move for a continuance or for a change of venue, although there was statutory provision for same if the facts warranted it.[6]

---

4. Act March 31, 1860, P.L. 427, § 40, 19 P.S. § 785. Sometime after the Darcy trial Capone plead guilty and was sentenced to life imprisonment. Zietz and Foster are presently awaiting execution deferred by the Governor of Pennsylvania pending the outcome of the Darcy proceedings.

5. Act June 24, 1939, P.L. 872, § 701, 18 P.S. § 4701.

6. Act March 18, 1875, § 1, Par. 2, 19 P.S. § 551, subd. 2—"In criminal prosecutions the venue may be changed, * * *. When, upon the application of a defend-ant in a felony, it is made to appear to the satisfaction of the court that, from undue excitement against the prisoner, in the county where the offense was committed, a fair trial cannot be had, or that there exists in that county so great prejudice against him that he cannot obtain a fair trial * * *."

Failure to make the motion would not be fatal if the record revealed fundamental error. See Brown v. Mississippi, 297 U.S. 278, 286–287, 56 S.Ct. 461, 80 L.Ed. 682.

Under the circumstances recited in relator's petition, a Pennsylvania court would in all probability deny a motion for continuance or a change of venue if such a motion had been made. See Com. v. Lockard, 325 Pa. 56, 188 A. 755; Com. v. Meyers, 290 Pa. 573, at page 577, 139 A. 374; Com. v. Riggs, 313 Pa. 457, 169 A. 896; Com. v. Skawinski, 313 Pa. 453, 169 A. 895; Com. v. Buccieri, 153 Pa. 535, 26 A. 228; Com. v. March, 248 Pa. 434, 94 A. 142; Com. v. Spallone, 154 Pa.Super. 282, 35 A.2d 727.

Nothing appeared in the record to show that alleged local prejudice or hostile sentiment affected the trial. Allegedly unfair newspaper articles were not offered in evidence, there was no public demonstration against defendant, no proof that the jury was led to the verdict by bias or prejudice. Com. v. Schurtz, 337 Pa. 405, at pages 409, 410, 10 A.2d 378, and see United States v. Katz, D.C.M.D.Pa., 78 F.Supp. 435, 439, affirmed, 3 Cir., 173 F.2d 116; Com. v. Flood, 302 Pa. 190, at page 197, 153 A. 152.

The refusal of the petition for change of venue on the ground that public sentiment had been aroused, that highly inflammatory articles had appeared in the public press, was not an abuse of discretion where the jury was not influenced. Com. v. Simmons, 361 Pa. 391, at pages 396, 397, 65 A.2d 353, at page 356, "We refused a change of venue because a strong feeling of revulsion is inevitable when such a crime is committed, especially in a rural community, but here there was nothing to indicate that defendant would be unable to obtain a fair trial, and the event so proved, because the jurors were carefully selected, the trial proceeded with calmness and deliberation * * * and there was nothing to show that they [the jurors] were influenced in any way by bias or prejudice."

The time and place to ascertain these things was by examination of each juror on his voir dire. Com. v. Celli, 153 Pa.Super. 88, at page 92, 33 A.2d 97, and see United States ex rel. Holly v. Com. of Pa., D.C., 81 F.Supp. 861, at page 871, affirmed 3

Cir., 174 F.2d 480. "* * * objections to the personnel of a selected jury must be made at the trial or they are considered to have been waived. Johnson v. United States, 225 U.S. 405, 32 S.Ct. 748, 56 L.Ed. 1142; Morgan v. Sun Oil Co., 5 Cir., 109 F.2d 178, certiorari denied 310 U.S. 640, 60 S.Ct. 1086, 84 L.Ed. 1408; Koch v. United States, 4 Cir., 150 F.2d 762, 763." Morton v. Welch, 4 Cir., 162 F.2d 840, at page 842; and see Buchalter v. New York, 319 U.S. 427, at page 430, 63 S.Ct. 1129, 87 L.Ed. 1492.

■ "The sole inquiry which we are permitted to make is whether the federal Constitution was contravened. (Rogers v. Peck, 199 U.S. 425, 434, 26 S.Ct. 87, 50 L.Ed. 256; Hebert v. State of Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270)." Powell v. Alabama, 287 U.S. 45, at page 52, 53 S.Ct. 55, 58, 77 L.Ed. 158, 84 A.L.R. 527.

"* * * It is elementary that the matter of continuance rests in the sound discretion of the trial court and its action in that respect is not ordinarily reviewable. It would take an extreme case to make the action of the trial court in such a case a denial of due process of law." Franklin v. South Carolina, 218 U.S. 161, at page 168, 30 S.Ct. 640, 643, 54 L.Ed. 980; and see Lisenba v. California, 314 U.S. 219, at page 228, 62 S.Ct. 280, 86 L.Ed. 166; Ex parte Hull, 312 U.S. 546, at page 551, 61 S.Ct. 640, 85 L.Ed. 1034; Avery v. Alabama, 308 U.S. 444, at page 446, 60 S.Ct. 321, 84 L.Ed. 377; Wallace v. United States, 8 Cir., 174 F.2d 112, at page 118; as to Pennsylvania, see e. g., Com. v. O'Keefe, 298 Pa. 169, at page 173, 148 A. 73, and Com. v. Karmendi, 328 Pa. 321, 337, 195 A. 62.

■ An examination of the record reveals an able, careful and searching examination of the prospective jurors by defense counsel.[7] The panel of jurors was excused from the court room and thereafter as the names were called each juror was questioned on his voir dire to determine whether he could serve as a fair

---

7. Conducted in accordance with the principles enunciated by Mr. Justice Agnew in 1874, Staup v. Com., 74 Pa. 458; cf. Com. v. Vitale, 250 Pa. 552, 95 A. 724.

and impartial juror. Great care was taken in the examination as to the events of the prior week; as to anything the prospective juror had heard or read prior to coming to court, and generally as to his state of mind from the viewpoint of fairness and impartiality. In the selection of the jury, including two alternates, defendant exhausted seven of a possible twenty preemptory challenges; the Commonwealth six. When the Commonwealth requested that two alternate jurors be selected (R. of T. 261) defendant's counsel indicated his intention to move for change of venue if unable to select two alternates from the original panel.[8] They were so selected and the motion was not pressed. In our judgment, defense counsel succeeded in obtaining a fair and impartial jury of eight men and four women. R. of T. 3–270.[9]

As an additional circumstance, relator complained that during the trial Judge Boyer appeared at different times in the court room and at times sat upon the bench and assisted and conferred with the presiding judge—Judge Keller—in the conduct of the trial. The transcript of testimony (pp. 830–831)[10] shows that Judge Boyer did participate in a *sidebar* discussion on a difficult question of law as to the admissibility of evidence of other crimes. The matter was raised on appeal, Com. v. Darcy, supra, 362 Pa. at page 282, dissent Jones J. at page 283, 66 A.2d at page 675; cf. Com. v. De Pofi, 362 Pa. 229, at pages 234–247, dissent Jones J. at pages 249–259, 66 A. 2d 649, 658, and on application for certiorari (denied 338 U.S. 852, 70 S.Ct. 82). On the appeal relator was represented by his trial lawyer together with two other able and leading members of the bar. See Com. ex rel. Darcy v. Claudy, supra, 367 Pa. at page 133, 79 A.2d 785. No question was raised however as to Judge Boyer's alleged appearances or "participation". As to waivers, see Johnson v. Zerbst, 304 U.S.

---

8. See § 1, Par. 3 and 4 of Act of March 18, 1875, P.L. 30, 19 P.S. § 551, subds. 3, 4, and see Com. v. Reilly, 326 Pa. 56, 58–59, 191 A. 14, but see Com. v. Riggs, supra, 313 Pa. 457, 459–460, 169 A. 896.

9. *At the conclusion of the trial in a fair and impartial charge the trial judge instructed the jury,* R. of T. 865, "The questions propounded to you in your preliminary examination, before you were accepted and sworn as jurors in this case, were all asked because of the importance of this trial, both to the Commonwealth and to the defendant. They were asked because both the Commonwealth of Pennsylvania and the defendant are entitled to a jury who will weigh, consider, and pass upon the evidence in a fair, impartial, and dispassionate manner, uninfluenced by any sympathy, prejudice, passion, emotion, or by anything other than the facts in the case as you may find them to be from the testimony as you have heard it from the witnesses and the laws of Pennsylvania applicable thereto as received from the court."

" * * * You are the sole judges of the questions of fact involved in this case and you must ascertain these facts exclusively from the evidence that was submitted at the trial, not from anything you may have heard or read from sources other than the testimony of the witnesses at this trial." R. of T. 866.

10. "Mr. Achey: I object to the offer first, because the defendant not having appeared on the stand or testified or any evidence having been introduced in his behalf it is incompetent under the provisions of the Act of 1947, No. 505, which amends the Act of 1911, which lays down the rules affecting the right of the Commonwealth to submit evidence of commission of other crimes.

"Judge Boyer: That applies only to cross-examination.

"Mr. Achey: I object to Judge Boyer sitting in on this case. I don't mind trying against one Judge—

"Judge Boyer: The Judges reserve the right to confer without being obliged to get the consent of defense counsel.

"Mr. Achey: In view of the statement which Judge Boyer made to the jury in the trial of Foster and Zietz, which was tried last week, I submit that he has disqualified himself from sitting in on this case, and it is prejudicial to this defendant.

"My objection, further, to the offer, is that the evidence of the commission of other crimes is not permissible in this particular case because it is restricted by the amendment of the Act in 1947.

"The Court: The objection is overruled. Exception. (Exception noted for defendant.)"

938

458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461; United States ex rel. Jackson v. Brady, 4 Cir., 133 F.2d 476, at page 481; Sanderlin v. Smyth, 4 Cir., 138 F.2d 729, 731; Carruthers v. Reed, 8 Cir., 102 F.2d 933, 938.

■ Essential unfairness should not be a matter of speculation but of demonstrable reality. Buchalter v. New York, supra, 319 U.S. at page 431, 63 S.Ct. 1129; Adams v. United States ex rel. McCann, 317 U.S. 269, at page 281, 63 S.Ct. 236, 87 L.Ed. 268. See comments Mr. Justice Holmes quoted in Com. ex rel. McGlinn v. Smith, 344 Pa. 41, at page 55, 24 A.2d 1.

We concur in the observations of the Supreme Court of Pennsylvania, 367 Pa. 130, 79 A.2d 785, that there is nothing whatever to indicate that any statements or action on Judge Boyer's part were prejudicial to relator's having a fair and impartial trial.

There are cases, see e. g. Frank v. Mangum, 237 U.S. 309, 335, 35 S.Ct. 582, 59 L.Ed. 969, where it was recognized that if in fact a trial is dominated by a mob so that there is an actual interference with the course of justice, there is a departure from due process of law. And again it has been stated that if the case is one where the whole proceeding is a mask,—where counsel, jury and judge were swept to the fatal and by an irresistible wave of public passion, and the State courts failed to correct the wrong, that cannot prevent a federal court from securing to the petitioners their constitutional rights. Moore v. Dempsey, 261 U.S. 86, at page 91, 43 S.Ct. 265, 67 L.Ed. 543; Powell v. Alabama, 287 U.S. 45, at page 51, 53 S.Ct. 55, 77 L.Ed. 158, and see the opinion of Mr. Justice Jackson in Shepherd v. State of Florida, 341 U.S. 50, 71 S.Ct. 549, " * * * the conclusion is inescapable that these defendants were prejudged as guilty and the trial was but a legal gesture to register a verdict already dictated by the press and the public opinion which it generated."

In the words of Mr. Justice Holmes in Ashe v. United States ex rel. Valotta, supra, 270 U.S. at page 426, 46 S.Ct. at page 334, "Extraordinary cases where there is only the form of court under the domination of a mob * * * offers no analogy to this." More analogous are cases like United States ex rel. Bongiorno v. Ragen, 7 Cir., 146 F.2d 349, 352; Bard v. Chilton, 6 Cir., 20 F.2d 906; Buchalter v. New York, supra, 319 U.S. at page 430, 63 S. Ct. 1129; United States ex rel. Buchalter v. Lowenthal, 2 Cir., 108 F.2d 863, and see Avery v. Alabama, supra, 308 U.S. at page 452, 60 S.Ct. 321. Of themselves, the foregoing incidents present no situation warranting interference by this court.

The relator avers that his counsel did not permit him to testify in his own defense;[11] did not produce reputation or psychiatric testimony,[12] although such was readily available and favorable to the relator;[13] that defense counsel had a duty to investigate and prepare the case, and to introduce all evidence and testimony which would be helpful to the jury in determining guilt or innocence and in fixing the penalty.

The decision not to have the defendant take the stand and testify, and not to call character and other witnesses in his behalf was apparently the result of a deliberate judgment on the part of defense counsel— see excerpt from record, footnote 10, supra; Act of July 3, 1947, P.L. 1239, § 1, 19 P.S. § 711; Com. v. Darcy, supra, Com. v. DePofi, supra. During the trial counsel believed, and not without justification (see dissenting opinion Jones J., in Com. v. De Pofi, supra) that by so doing he could prevent the reception of evidence of other

11. See Act May 23, 1887, P.L. 158, § 10, 19 P.S. § 631.

12. Admissible as to penalty, Com. v. Stabinsky, 313 Pa. 231, at page 237, 169 A. 439, not as to guilt or innocence. Com. v. Tetrosky, 313 Pa. 240, 169 A. 442. See observation of Mr. Justice Frankfurter, dissenting in Solesbee v. Balkcom, 339 U.S. 9, at page 24–25, 70 S.Ct. 457, at page 464, 94 L.Ed. 604, as to the "present state of the tentative and dubious knowledge as to mental diseases and the great strife of schools in regard to them * * *." And see R. of T. 840 at 848–849.

13. It appears that every witness who knew about the murder was called and testified.

crimes in which his client was involved, and in addition have the right to speak last to the jury. R. of T. 862. As to the evidence of other crimes, his position was not sustained on appeal or on certiorari. Many able lawyers have had similar experiences. Cf. Sunal v. Large, supra, 332 U.S. at pages 182, 183, 67 S.Ct. 1588.

■ Having taken the position assumed at the trial, defendant cannot now properly ask to retry his case on a different theory.

■ When a party in a criminal case knowingly and deliberately adopts a course of procedure which at the time appears to be to his best interests he cannot be permitted at a later time, after decision has been rendered adversely to him, to obtain a retrial according to procedure which he has voluntarily discarded and waived. Carruthers v. Reed, supra, 102 F.2d at page 938; Johnson v. Zerbst, supra, 304 U.S. at page 469, 58 S.Ct. 1019; Sanderlin v. Smyth, supra, 138 F.2d 729; United States ex rel. Jackson v. Brady, 133 F.2d 476, at page 481; United States v. Kobli, 3 Cir., 172 F.2d 919, at page 920, footnote 2.

What Judge Maris said in United States v. Sorrentino, 3 Cir., 175 F.2d 721, 723, is most appropriate: "* * * defendant was represented by * * * experienced lawyers of his own choice. * * * the record shows that they were assiduous in defending his interests throughout the trial. By virtue of their employment by him the control of the conduct of his defense was confided in them and they were authorized to speak for him in matters such as this which might arise during the course of the trial. * * * (defendant) did not at any time indicate to the court that he was

not fully satisfied * * *. It must, therefore, be concluded that he acquiesced in his counsel's judgment * * *." United States v. Moe Liss, 2 Cir., 105 F.2d 144, at page 145; Eury v. Huff, 4 Cir., 141 F. 2d 554; United States v. Colonna, 3 Cir., 142 F.2d 210, at page 213; Tompsett v. State of Ohio, 6 Cir., 146 F.2d 95, at page 98; Felts v. Murphy, 201 U.S. 123, 130, 26 S.Ct. 366, 50 L.Ed. 689.

■ The pervasive function of the Fourteenth Amendment is to exact from the States' observance of basic liberties. United States ex rel. Auld v. Warden of New Jersey State Penitentiary, supra, 187 F.2d at pages 619–620. Defendant was afforded an opportunity to be heard, to examine the witnesses against him, and to offer testimony. He had the effective aid and assistance of counsel of his choice. There was throughout judicial character in the proceedings. The hearing was a real one and not a sham or pretense.[14] Palko v. Connecticut, 302 U.S. 319, at page 327, 58 S.Ct. 149, 82 L.Ed. 288. He was not therefore, in the light of the decisions interpreting the Fourteenth Amendment,[15] deprived of due process of law. In re Oliver, 333 U.S. 257, at page 273, 68 S.Ct. 499, 92 L. Ed. 682.

■ Concededly state courts as well as federal courts have a duty to guard and protect every right secured by the Constitution. Robb v. Connolly, 111 U.S. 624, at page 637, 4 S.Ct. 544, 28 L.Ed. 542; Mooney v. Holohan, supra, 294 U.S. at pages 112–113, 55 S.Ct. 340. Defense counsel have duties and obligations to the court, to the client, and to society. Von Moltke v. Gillies, 332 U.S. at 708–721 and

14. As in Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (confessions extorted by state officers); Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302 (coercion); Mooney v. Holohan, supra, 294 U.S. 103, 55 S.Ct. 340 (perjury known to prosecuting attorney); Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (prison officials); Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (sentencing judge).

15. Powell v. Alabama, 287 U.S. 45, 68–70, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R.

527; Betts v. Brady, 316 U.S. 455, at pages 466–468, 62 S.Ct. 1252, 86 L.Ed. 1595; Bute v. Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Glasser v. United States, 315 U.S. 60, at page 69, 62 S.Ct. 457, 86 L.Ed. 680; Hawk v. Olson, 326 U.S. 271, at pages 273, 274, 66 S.Ct. 116, 90 L.Ed. 61; House v. Mayo, 324 U.S. 42, 46, 65 S.Ct. 517, 89 L.Ed. 739; Ex parte Hawk, 321 U.S. 114, 115–116, 64 S.Ct. 448, 88 L.Ed. 572; cf. Sunal v. Large, supra, 332 U.S. 174, 67 S.Ct. 1588.

725-726, 68 S.Ct. 316, 92 L.Ed. 309 (citing Canon 15 of Canons of Professional and Judicial Ethics of the American Bar Association) and see dissent of Mr. Justice Burton, 332 U.S. at page 741, 68 S.Ct. at page 331. The trial judge has the duty to see that defendant is dealt with justly and fairly. Johnson v. Zerbst, supra, 304 U.S. at page 465, 58 S.Ct. 1019; Hawk v. Olson, supra, 326 U.S. at page 273, 66 S.Ct. 116; Powell v. Alabama, supra, 287 U.S. at page 52, 53 S.Ct. 55; Glasser v. United States, supra, 315 U.S. at page 71, 62 S. Ct. 457. Finally the prosecuting attorney has his obligations.

There is a limit however to which a trial judge or prosecuting attorney may go in protecting a defendant's interests. See Powell v. Alabama, supra, 287 U.S. at page 61, 53 S.Ct. 55; cf. Hickman v. Taylor, 329 U.S. 495, at pages 510–511, 67 S.Ct. 385, 91 L.Ed. 451. Defense counsel has the right to work with some degree of privacy, free from intrusion from the trial judge or prosecuting attorney. If the trial judge or prosecuting attorney here attempted sua sponte to interfere in any manner with defendant's choice of counsel, his strategy or conduct of the defense, it would have been reversible error. Cf. United States v. Bergamo, 3 Cir., 154 F.2d 31.

There may be a case where counsel selected by defendant was so lacking in competence as to amount practically to no defense at all. In such a case the failure of the trial judge or prosecuting attorney to observe and correct it would be a denial of a fair trial and of due process of law. See Tompsett v. State of Ohio, supra, 146 F.2d 95; Miller v. Hudspeth, 10 Cir., 176

F.2d 111, at pages 119–120. An extreme case however must be shown; one where the circumstances surrounding the trial shocked the conscience of the court and made the proceedings a farce and a mockery of justice.[16] Diggs v. Welch, 80 U.S. App.D.C. 5, 148 F.2d 667, certiorari denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002; Andrews v. Robertson, 5 Cir., 145 F.2d 101–103.

■ The Fourteenth Amendment is directed against state action, not against wrongs done by individuals who do not act for the state or under color of state authority. In re, Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441; Hysler v. Florida, 315 U.S. 411, 62 S.Ct. 688, 86 L.Ed. 932. It does not matter by what agency of the state the violation occurred. Frank v. Mangum, supra, 237 U.S. at pages 327–328, 35 S.Ct. 582.

■ While a lawyer is an officer of the court, and Johnson v. Zerbst, supra, 304 U.S. at page 466, 58 S.Ct. 1019, held that failure to appoint counsel for the defendant was a failure to complete the court, the defense counsel qua lawyer is not however a state officer within the contemplation of the Fourteenth Amendment.

There was here no conduct of the trial judge, prosecuting attorney, or defense counsel in any manner subject to just criticism or which unfairly prejudiced the defendant. There is nothing even remotely suggesting lack of professional skill, ability, loyalty or devotion of defense counsel to the defendant and his cause.

16. Allegations of even serious mistakes on the part of defense counsel, that he failed to have defendant testify or offer testimony in his behalf; failed to properly prepare for trial or obtain available evidence; or did not ask for a change of venue or continuance, or take an appeal, are not per se sufficient to warrant habeas corpus. Ex parte Smith, D.C. M.D.Pa., 72 F.Supp. 935; Morton v. Welch, 4 Cir., 162 F.2d 840–842; Helms v. Humphrey, D.C.D.Minn., 63 F.Supp. 4; Ex parte Haumesch, 9 Cir., 82 F.2d 558; Farrell v. Lanagan, 1 Cir., 166 F.2d 845–847; Jones v. Dowd, 7 Cir., 128

F.2d 331, 332; Sweet v. Howard, 7 Cir., 155 F.2d 715; Strong v. Huff, 80 U.S. App.D.C. 89, 148 F.2d 692; United States ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976; Achtien v. Dowd, 7 Cir., 117 F.2d 989; and see 23 C.J.S., Criminal Law, § 1443; 24 C.J.S., Criminal Law, § 1948, page 1112.

As to the difference between denial and failure to enjoy, see Hudspeth v. McDonald, 10 Cir., 120 F.2d 962, 968; Miller v. Hudspeth, supra, 176 F.2d at page 119; Burkett v. Mayo, 5 Cir., 173 F.2d 574.

█ We are not charged with a review of the strategy of defense counsel. Burkett v. Mayo, 5 Cir., 173 F.2d 574; as to same, see Com. ex rel. Darcy v. Claudy, 367 Pa. 130, at page 133, 79 A.2d 785. The defendant is entitled to a fair trial, not a perfect one. His counsel is not required to be infallible. United States ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976.

The rule in Pennsylvania is that " * * no lawyer can be expected to do more than exercise a reasonable skill which cannot be fairly judged by the result of the trial alone." [17] Com. v. Thompson, 367 Pa. 102, at page 109, 79 A.2d 401, 405. In federal courts the Constitution does not guarantee the assistance of the most brilliant counsel. United States ex rel. Mitchell v. Thompson, D.C., 56 F.Supp. 683, at page 688; Ex parte Smith, supra, 72 F.Supp. 935, 940; United States ex rel. Feeley v. Ragen, supra, 166 F.2d at page 980; cf. Von Moltke v. Gillies, supra, 332 U.S. at page 726, 68 S.Ct. 316.

Unquestionably, now that the record is made, able counsel can go over every question and perhaps frame a better one, may assign better reasons for objections taken, may suggest avenues of cross-examination which did not occur to him who actually faced the court and jury. So, too, military strategists go over the movements of lost battles and demonstrate how it might have been won.

█ Following the precepts of Johnson v. Zerbst, supra, 304 U.S. at page 465, 58 S.Ct. 1019; United States ex rel. Kennedy v. Burke, 3 Cir., 173 F.2d 544, we examined the facts looking through form and into the heart and substance of the petition, the record in the trial and appellate courts, including the transcript of the testimony of the trial proceeding.[18] We accept as true all of the well pleaded allegations of the petition, however much they may tax credulity,[19] except to the extent that they conflict with the record and the trial transcript itself. Walker v. Johnston, supra, 312 U.S. at page 284, 61 S.Ct. 574; Hill v. United States ex rel. Wampler, 298 U.S. 460, 464, 56 S.Ct. 760, 80 L.Ed. 1283; Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009; Bowen v. Johnston, 306 U.S. 19, at page 23, 59 S.Ct. 442, 83 L.Ed. 455.

█ "Facts of record with regard to what occurred at a trial cannot be attacked on habeas corpus." [20] Williams v. Huff, 79 U.S.App.D.C. 31, 142 F.2d 91, at page 92; Id., 79 U.S.App.D.C. 326, 146 F.2d 867; Ex parte Whistler, D.C., 65 F.Supp. 40.

This is not a case of waiver of counsel but one where the precise question is

17. Since 1718, Pennsylvania courts have been solicitous as to the right of a defendant to have counsel in murder cases. He has the right to choose his own lawyer but counsel is provided where he is unable to do so. Com. v. Thompson, 367 Pa. 102, 79 A.2d 401, at page 403; as to other cases, see Com. ex rel. McGlinn v. Smith, 344 Pa. 41, 45, 24 A.2d 1; Com. v. O'Keefe, 298 Pa. 169, 148 A. 73.

18. In re Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; Craemer v. State of Washington, 168 U.S. 124, 129, 18 S.Ct. 1, 42 L.Ed. 407; Andersen v. Treat, 172 U.S. 24, 19 S.Ct. 67, 43 L.Ed. 351; Frank v. Mangum, supra, 237 U.S. at pages 332, 346, 35 S.Ct. 582; Ex parte Hull, 312 U.S. 546, at page 551, 61 S.Ct. 640, 85 L.Ed. 1034; United States ex rel. Kennedy v. Burke, 3 Cir., 173 F.2d 544; United States ex rel. Auld v. Warden of New Jersey State Penitentiary, supra, 187 F.2d at page 617; United States ex rel. Holly v. Com. of Pa., D.C., 81 F.Supp. 861, affirmed 3 Cir., 174 F.2d 480. Note 61 Harv.L.Rev., supra, 662; Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857, at pages 869–870; cf. United States ex rel. Innes v. Hiatt, 3 Cir., 141 F.2d 664, at page 665.

19. Waley v. Johnston, 316 U.S. 101, at page 104, 62 S.Ct. 964, 86 L.Ed. 1302; Walker v. Johnston, supra, 312 U.S. at page 287, 61 S.Ct. at page 579, "Improbable and unbelievable"; Williams v. Kaiser, 323 U.S. 471, at page 476, 65 S.Ct. 363, 366, 89 L.Ed. 398—may turn out to be "specious and unfounded."

20. Cf. Centers v. Sanford, 5 Cir., 120 F.2d 217; same case in 315 U.S. 784, 62 S.Ct. 802, 86 L.Ed. 1190; Williams v. Huff, supra, 79 U.S.App.D.C. 31, 142 F.2d at page 92, footnote 2; Curtis v. Hiatt, 3 Cir., 161 F.2d 621, at page 623; but see Williams v. Huff, supra, 79 U.S.App. D.C. 326, 146 F.2d at page 868.

942

spelled out in the record and the averment of the petition is in flat contradiction of what the record actually shows to have occurred.

As to the statements by jurors, "Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference." McDonald v. Pless, 238 U.S. 264, at pages 267, 268, 35 S.Ct. 783, 784, 59 L.Ed. 1300.

"He who makes studied inquiries of jurors as to what occurred there acts at his peril, lest he be held as acting in obstruction of the administration of justice. Much of such conversation and inquiry may be idle curiosity, and harmless, but a searching or pointed examination of jurors in behalf of a party to a trial is to be emphatically condemned. It is incumbent upon the courts to protect jurors from it." Rakes v. United States, 4 Cir., 169 F.2d 739, at pages 745, 746.

As to Pennsylvania, see observations in Com. ex rel. Darcy v. Claudy, supra, 367 Pa. 130, 79 A.2d 785.

 Since it appears that petitioner is not entitled to a writ and that his petition is without merit (28 U.S.C.A. § 2243; Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830; Ex parte Quirin, 317 U.S. 1, 24, 63 S.Ct. 1, 87 L.Ed. 3) we have no alternative but to dismiss.